DECISION
Sea Fare's American Café, Inc., et. al. ("Plaintiff") entered into a lease dated February 15, 1992 ("lease") with Brick Market Place Associates, et. al. ("Defendant"). Defendant operates a real estate commercial development in Newport known as the Brick Market Place. That development houses several different commercial tenants, including Plaintiff.
The sole issue to be resolved is whether Plaintiff has overpaid or underpaid "additional rent" pursuant to the terms of the lease. The Supreme Court remanded this matter to the Superior Court for trial having found that this Court had erred in granting summary judgment on that issue. In that the Supreme Court found that the lease is ambiguous as it relates to the calculation of "additional rent", the Court will undertake a review of the lease and relevant extrinsic evidence to ascertain the intent of the parties.
At trial the parties agreed to a stipulated record. The evidence before the Court consists of:
 1. A fact stipulation between the parties including attached Exhibits 1, 2, 3 and 4. (Joint Exhibit 1 or "Stipulation");
 2. Selected trial testimony of George Karousos from the earlier 1999 trial (Defendant's Exhibit A);
 3. Selected trial testimony of Theodore Karousos from the earlier 1999 trial (Defendant's Exhibit B);
 4. Full trial testimony of Jay Schochet from the earlier 1999 trial (Defendant's Exhibit C);
 5. Full trial testimony of John "Jack" Booth from the earlier 1999 trial (Defendant's Exhibit D);
 6. The document identified in the 1999 trial testimony as Defendant's Exhibit A entitled "BMP II Parking Operations 1994 Season" dated March 31, 1994 (Defendant's Exhibit E);
 7. The document identified in the 1999 trial testimony as Defendant's Exhibit B entitled "Sea Fare's American Café 1995-1996 BMP II Parking" dated March 15, 1995 (Defendant's Exhibit F).
Plaintiff is responsible for three types of monthly payments to Defendant. Two of those payments are not at issue; namely, the fixed monthly base rent and the other rent based on a percentage of Plaintiff's sales. The third payment, called "additional rent," is contained in the lease and is based on Plaintiff's "Percentage Share" of certain expenses. "Percentage Share" is a defined term and is set at 33.96% for the Plaintiff. This computation is based upon a total rentable space within the building of 19,611 square feet and Plaintiff's occupancy of 6,660 square feet (i.e., 6,660 square feet / 19,611 square feet = .3396). (Lease, p. 7, Exhibit 1 to the Stipulation.) The lease also identifies certain items of expense that comprise "additional rent" to be allocated to tenants according to each tenant's Percentage Share. These items of expense relate to the entire "Property." "Property" is defined under the lease as the land and the building located thereon. Finally, the lease provides that "[i]n the event the rentable space within the Property increases or decreases, (Plaintiff's) Percentage Share shall be adjusted accordingly." (Lease, p. 7.) These provisions are central to the issue at dispute in this litigation.
The development also contains a parking lot. The lease acknowledges the existence of the parking lot. It also acknowledges that Defendant can do whatever it wants with the parking lot, including charging fees. (Lease, p. 12.) Defendant has chosen to contract with Jack Booth who collects fees for parking and splits the proceeds with Defendant. Plaintiff's only right under the lease is to four free parking spaces for its employees, or whomever else it may choose, plus one hour of validated parking for its customers.
Since the beginning of the lease, Plaintiff has paid "additional rent" on an estimated monthly basis. Defendant forwards yearly to Plaintiff a reconciliation indicating the actual amount of "additional rent" due under the lease. Defendant asserts that Plaintiff has underpaid. Plaintiff believes that it has overpaid. Because of these differing interpretations of the lease, Plaintiff has continued to pay only the monthly estimates without any formal reconciliation.
The parties have agreed on certain pertinent figures: the amount Plaintiff has actually paid, the amount Defendant believes Plaintiff should have paid, and the amount Plaintiff believes it should have paid. These figures are stated through the end of December, 2001. Thus, the only issue before the Court is the proper application of the lease.
The question presented is whether the parties intended that the parking lot be included in the calculation of "rentable space," either when the lease was executed or at any point thereafter. The provision that gives rise to this dispute is found in the lease, page 7, which provides that an increase or decrease in "the rentable space within the Property" would trigger a change in Plaintiff's Percentage Share because the parking should be factored into the square footage calculation. Plaintiff contends that phrase should result in a reduction of its Percentage Share. The Court rejects that interpretation.
The parties knew about the parking lot when they entered into the lease. They did not include it as "rentable space" in calculating Plaintiff's Percentage Share at the inception of said leasehold. It is illogical to conclude that the parties intended to include the parking lot in the "rentable space" calculation. This conclusion is evident from the fact that they expressly excluded the parking lot from the calculation of the Plaintiff's Percentage Share, which amounted to 33.96%. Plaintiff's contention that the parties intended to include the parking lot as rentable space in determining an increase or decrease in rentable space is similarly flawed. If Plaintiff were correct, the 33.96% figure would be wrong at the outset when the parties signed the lease. Furthermore, the reservation of right to charge a fee for parking is further indication that such parking should not be construed as "rentable space" as provided elsewhere in the lease. The mere fact the Defendant has chosen to contract with another party to collect such fee does not alter this conclusion. It simply does not convert the parking into "rentable space" as contemplated by the lease. Moreover, in reviewing the expenses to be allocated pursuant to a tenant's Percentage Share, it would be unreasonable to conclude that such expenses would be allocated for parking spaces in the same manner it would be for commercial building space.
That provision which refers to a change in rentable space in the "Property" rather than the "Building" does so for obvious and necessary reasons. The lease undoubtedly anticipates a potential situation where rentable space increases, through a new structure or an addition to the outside of the Building. In such circumstances, the burden of paying a Percentage Share of the expenses would have to be reallocated to ensure that all tenants were paying their share of electricity, maintenance etc. It has nothing to do with the parking lot. In either case, the increase in rentable space would not occur "within the Building" but would occur "within the Property."
Finally, there is very little extrinsic evidence bearing on this issue. However, such evidence that exists supports the interpretation urged upon this Court by Defendant. The lease is virtually identical to the lease of the predecessor tenant, Dave Eddie's Restaurant (Exhibit 4 to the Stipulation). While there are some differences between the Dave Eddie's lease and the lease between Plaintiff and Defendant, none of those differences have anything to do with the calculation of "additional rent." Rather, those particular provisions in both leases are virtually identical. Just like Plaintiff, Dave 
Eddie's also paid "additional rent" based on a 33.96% Percentage Share of the rentable space within the Building. The parking lot was irrelevant. Dave Eddie's occupied the exact same physical space as Plaintiff and paid rent in the exact same manner based on the exact same calculations. (Stipulation, 5.) That practice remained unchanged when Plaintiff took over the space and Plaintiff should pay rent on the exact same basis.
In summary, the intention of the parties is clear. Plaintiff paid a certain percentage of expenses based upon its share of the rentable space within the Building. The lease contains a provision allowing that percentage to be adjusted in the event that a new structure or addition is added to the Property, creating a change in "rentable space," or in the event the Property is altered by eliminating part of the Building. The parking lot is not "rentable space" as that term is used in the lease, and has nothing to do with the Percentage Share. There is no evidence to support a conclusion that the rentable space within the Property has increased or decreased in any fashion. Given these facts, Plaintiff owes Defendant "additional rent" (plus applicable interest pursuant to the Lease) in the amount of $102,090. (Exhibit 3 to the Stipulation.) Therefore, the Percentage Share of 33.96% should remain unchanged.
 CONCLUSION
Plaintiff's Percentage Share remains at 33.96%. Nothing has occurred to support an increase or decrease in that share. Plaintiff owes Defendant the current sum of $102,090 plus 15% interest pursuant to the lease. The Plaintiff will be obligated to continue to pay "additional rent" based upon a 33.96% Percentage Share absent prospective additions or reductions in the Building.
Counsel shall prepare a form of judgment consistent with this Decision.